MRS. LUCY GRIMSLEY v. MISS NELL SCOTT.

(Filed 2 February, 1938.)

**Automobiles § 14—Evidence held to show contributory negligence of plaintiff hitting parked car while sledding.**

> The evidence favorable to plaintiff tended to show that defendant's car was parked too far from the curb and too near an intersection in violation of a city ordinance, that plaintiff was coasting down a steep grade on a sled after dark, did not see the parked car until 50 or 100 feet away because blinded by a large street light, and was unable to avoid hitting the car although there was a clear passage of 20 feet between defendant's car and the cars parked on the other side of the street. *Held:* Even conceding the evidence shows negligence on the part of defendant in parking the car, plaintiff's evidence discloses contributory negligence barring recovery as a matter of law.

APPEAL by plaintiff from *Hill, Special Judge,* at March Term, 1937, of FORSYTH. Affirmed.

This is an action for actionable negligence brought by plaintiff against defendant, alleging damage. The defendant denied negligence and set up the defense of "last clear chance" and contributory negligence.

In the city of Winston-Salem there are certain streets that have very. steep grades. Jersey Avenue leads into Summit Street and continuing down Summit Street there is a triangle. One can continue down Summit Street or turn into Carolina Avenue at the triangle and go down Carolina Avenue. In going down Summit Street and Carolina Avenue the grade is steep.

The defendant, an hour or two before the injury complained of, had parked her car opposite the home in which she lived on the triangle, it is alleged by plaintiff contrary to law—too near the intersection of Summit Street and Carolina Avenue and not close enough to the curb. Ice and snow were on the streets and the plaintiff, while sitting on a sled with her daughter (about 11 years of age) in front of her, ran into the parked car of defendant and was seriously injured. The accident occurred on 31 December, 1935, about 8 o'clock at night. A street light was burning on Summit Street and near its intersection with Carolina Avenue, and some 28 feet from the east end of the triangle near which defendant's car was parked. Carolina Avenue was 34 feet wide. Cars were parked near the curb on the street opposite to the triangle. There was 20 feet clear space on Carolina Avenue for one to travel.

Guy T. Hinshaw, witness for plaintiff, testified, in part: "The steepest part of the grade is about where Jersey Avenue enters Summit. Summit curves to the left from Jersey, going down the hill. The grade where Jersey enters Summit is 12.9%. There is a long swinging curve

from Jersey Avenue into Summit Street. From where Jersey Avenue hits the curb line on Summit Street it is 150 feet to the east end of the triangle. . . . There is a street light shown on the map just before reaching the triangle, in Summit Street. It is approximately twenty-eight feet from the east end of the triangle. *It is a large suspended light over the street; I think it is a standard light.*"

The plaintiff testified, in part: "About a week prior to 31 December, 1935, quite a deep snow fell in Winston-Salem, and this snow remained on the ground for several days, and the ground was covered with snow on the evening of 31 December. . . . I did not go coasting until in the evening, after six o'clock. . . . I started from my home about 6 :25 or 6 :30 on the evening of 31 December, and the signs were up then. I did not go coasting before the signs were up. First, I went to Mrs. McNair's home and waited for her, as she was going with me. She lives at the intersection of Manly and Summit streets. I have coasted all my life. I was raised in Virginia and coasted there. My little daughter was with me when I left home on this occasion. She was eleven years old at that time. We left our home on Carolina Avenue, and in going to Mrs. McNair's we came out Carolina Avenue to this triangle, went by the triangle and crossed the street by the triangle, going up Summit Street, on the left. At that time, which was 6 :25 or 6 :30, there was no car parked at that triangle. There were cars parked on the right-hand side of the street in front of the apartments, across the street from the triangle. When I arrived at Mrs. McNair's home she was not ready to go coasting with us, and we waited for her something like an hour, and then we went up to a point near Sixth Street as it enters Summit Street, and started coasting from there down Summit Street, on the right-hand side. I was on my sled with my little girl in front of me on the sled. . . . I was on the sled coasting down, and after I came around the curve beyond Jersey Avenue to about this point (indicating on map), just before *I got to that big street light, I saw the car.* I could not see it sooner because of the light. I looked to the right and planned to turn to the right, going down Summit Street, but that street was blocked with this sign; I could see it plainly then, and I turned to the left as far as I possibly could, but I could not miss the car which was parked on Carolina Avenue at the triangle, and near the east end of the triangle. . . . I was injured about eight-twenty that night. I only coasted down that hill two times that night, the first time as far as Jersey Avenue, and the second time all the way down to Carolina Avenue, when I was injured. . . . There was a wide space in the street we could coast. . . . The whole street was covered with snow and came up just about even with the curb. Vehicles had not made a track up and down the hill. The street was smooth.

GRIMSLEY *v.* SCOTT.

There were no ruts in that street.   .   .   .   My sled was running on top of the ice, the runners of the sled being on top of the ice.   The ice had refrozen where it had melted and there was ice on top of the snow and the runners of the sled did not cut through.   *It was slick.*   .   .   .   I was coasting on a Flexible Flyer sled, with steel runners, I would say an inch wide at least.   .   .   .   *I could not have been more than a hundred feet up the hill from that street light shown on the map when I first saw the automobile parked, and probably not that much.*   I was just in front of the light because the light blinded me.   It was less than a hundred feet, I would say between fifty and one hundred feet, when I first saw the car.   It was not more than fifty feet ahead of the light.   I saw the car, say, fifty feet east of the light for the first time.   I do not know how fast my sled was going at that time.   It was sliding, going smoothly; *it was going fast enough then.*   .   .   .   I cannot tell how fast my sled was going when I got to Carolina Avenue.   *I must have been going very fast.*   .   .   .   I don't have any idea how fast my sled was going at that point.   *I had been coasting down a very steep hill.*   My daughter and I had traveled on the sled at least two hundred yards down Summit Street *and had all the speed we could make running on top of ice.   We were going fast.*   .   .   .   Notwithstanding the fact that *I knew it was so slick and that I could not stop, I was going down without any brakes,* sitting up with my feet out in front and my little daughter in front of me.   There are no brakes on a sled.   You can guide the sled with your feet or hands, and have perfect control of it by that guiding.   .   .   .   There was no obstruction between the cars parked on the east side of Carolina Avenue and Miss Scott's car parked on the triangle, or west side; there was no signs or barricades of any kind there, and *that thirty-four foot street was open between Miss Scott's car and cars parked on the other side, or east side of the street.*   .   .   .   I did not plan to stop the sled at the triangle; I planned to go on home on Carolina Avenue. *My sled was going much faster when we reached the triangle than at Jersey Avenue, because we had gained momentum, I imagine."*

The plaintiff made numerous exceptions and assignments of error. The material ones and necessary facts will be considered in the opinion.

*Polikoff & McLennon and Ratcliff, Hudson & Ferrell for plaintiff.*
*Peyton B. Abbott and Hastings & Booe for defendant.*

PER CURIAM.   At the close of plaintiff's evidence the defendant in the court below made a motion for judgment as in case of nonsuit, which was refused.   This motion was renewed at the close of all the evidence (C. S., 567), and was granted.   In this we see no error.

Defendant introduced city ordinances of Winston-Salem, in regard to skating on the street, being section 126, as follows: "Section 126.—*Skat-*

*ing or Coasting on Street Forbidden.* All persons are hereby forbidden to coast on sledge, coaster express wagon, toy wagon or other similar vehicle or move or skate on any roller skates or other similar device on or along that part of any of the streets of the city that lies between the curbing."

The plaintiff offered the following testimony in rebuttal: Section 141 of the city ordinances of the city of Winston-Salem, and also section 170 of the ordinances, as follows: "Section 141—*Vehicles Shall Stop Within Twelve Inches of Curb.*—When it is necessary for a vehicle to be stopped at the curb, it shall be stopped with the right-hand side next to the same and both front and rear wheels on said side shall be not more than twelve inches from the curb." "Section 170.—*Police to Manage Traffic.*—The police department shall have full power and authority in relation to the management of traffic, including street cars, and all street cars and other vehicles shall instantly stop when ordered to do so by any policeman."

We find no sufficient evidence in the record that the above ordinance, section 126, has been repealed by the city of Winston-Salem. We think section 170 has no bearing on the facts in this case. From the view we take of the controversy the exceptions and assignments of error made by plaintiff to the admission and exclusion of evidence are immaterial and cannot be sustained.

In *Lee v. R. R.,* 212 N. C., 340 (341), it is held: "Conceding, but not deciding, that the defendant was negligent in permitting the trees and houses to remain on its right of way and in allowing its flat car to stop across the highway without lights or other signals of its presence, still we think the evidence discloses contributory negligence on the part of the plaintiff which bars recovery. It is sufficient to defeat recovery if plaintiff's negligence is one of the proximate causes of the injury, it need not be the sole proximate cause. *Construction Co. v. R. R.,* 184 N. C., 179; *Davis v. Jeffreys,* 197 N. C., 712."

Conceding that defendant was negligent in parking her car, yet we think plaintiff was guilty of contributory negligence. She was sitting on the sled wth her young daughter in front of her, going down a steep incline very fast, on slick ice. The car of defendant, which was parked on the triangle, could be seen by the plaintiff 50 to 100 feet away. There was a large light over the street—a standard light. Plaintiff testified it was a "big street light." She said that she had a clear passageway on Carolina Avenue of 20 feet. Plaintiff, going down grade at a rapid speed on slick ice, keeping near the curb on Carolina Avenue, hit the rear end of defendant's car and was injured. We think the contributory negligence of plaintiff was the proximate cause of her injury.

For the reasons given, the judgment of the court below is
Affirmed.